UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| DANIEL SMITH,<br><br>    Plaintiff,<br><br>vs.<br><br>MOUNT MARTY UNIVERSITY,<br><br>    Defendant. | 4:22-CV-04015-KES<br><br><br>ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

  Plaintiff, Daniel Smith, sues defendant, Mount Marty University, alleging that Mount Marty violated the Americans with Disability Act (ADA) and the Rehabilitation Act. *See* Docket 1. Smith seeks monetary damages for lost future income-earning capacity, educational costs, prejudgment interest, attorney's fees, costs, and emotional damages. *See id.* at 11. Mount Marty moves for partial summary judgment, arguing that Smith's request for emotional damages necessarily fails as a matter of law because such damages are unavailable to Smith under the ADA and Rehabilitation Act. *See* Docket 17; Docket 20 at 2. Smith opposes Mount Marty's motion. Docket 25. After reviewing the parties' arguments and the record, the court issues the following order.

**I. Facts**

Viewing the record in the light most favorable to Smith, the dispositive facts for purposes of Mount Marty's motion are:

Daniel Smith enrolled as a student in Mount Marty's Nurse Anesthesia Program. *See* Docket 18 ¶ 2; Docket 23 ¶ 2[1] (only disputing which semester Smith began). Mount Marty is a private university in Yankton, South Dakota, that receives federal funds. *See* Docket 18 ¶ 1; Docket 23 ¶ 1; Docket 24-1 at 6. Smith is diagnosed with Attention Deficit Disorder. *See* Docket 19-1 at 8. Based on this diagnosis, Mount Marty granted Smith three accommodations. Docket 24-2; *see generally* Docket 19-1. In Smith's Spring 2020 semester, Smith received two "C" grades. Docket 18 ¶ 6; Docket 23 ¶ 6. In summer 2020, Mount Marty dismissed Smith, citing its policy that requires dismissal when a student receives two "C" grades.[2] Docket 18 ¶ 7; Docket 23 ¶ 7 (not disputing dismissal); Docket 24-6 at 6 (policy); Docket 19-3 (upholding dismissal decision based on grades).

Smith brings forth his disability discrimination claims, arguing that one of his professors, Dr. Larry L. Dahlen intentionally failed to implement the accommodations that Mount Marty had granted to Smith. *See* Docket 1 ¶¶ 15-

---

[1] Smith's response to the second paragraph of Mount Marty's statement of undisputed facts states that Smith has no objection, but the third paragraph contains an objection, stating that Smith began his studies during the *summer* of 2020. *See* Docket 23 ¶¶ 2-3. Based on the totality of Smith's response and construing his submission in the light most favorable to him, the court assumes that Smith objects to the second fact rather than the third.

[2] Mount Marty points out that Smith's transcript lists he received a "D" during his fall semester 2019. *See* Docket 20 at 3; Docket 19-2 at 2. Smith acknowledges his transcript says he received a "D," but argues this grade is wrong because it is not a recognized grade under Mount Marty's academic handbook. *See* Docket 23 ¶ 5; Docket 24-6 at 6-7 (listing only A, B, C, and F as grade options). The court need not resolve this issue as it is not relevant to the issue before the court today, namely whether Smith may recover emotional damages.

23. Smith also alleges Mounty Marty retaliated against him for attempting to enforce his accommodation requests. *See id.* ¶¶ 28-33.

## II.     Standard

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *Morrow v. United States*, 47 F.4th 700, 704 (8th Cir. 2022) (alteration in original) (quoting *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995)). In reviewing the record, the court views the facts in the light most favorable to the non-moving party. *Lissick v. Andersen Corp.*, 996 F.3d 876, 882 (8th Cir. 2021). While "[t]he mere existence of a scintilla of evidence in support of the [movant's] position will be insufficient[,]" *Turner v. XTO Energy, Inc.*, 989 F.3d 625, 627 (8th Cir. 2021) (citation omitted), a party moving for summary judgment is not entitled to summary judgment just because the facts he offers may appear to be more plausible or because the adversary may be unlikely to prevail at trial, see *Handeen v. Lemaire*, 112 F.3d 1339, 1354 (8th Cir. 1997).

### III. Discussion

#### A. ADA

The Americans with Disabilities Act broadly protects against disability discrimination in various settings. 42 U.S.C. § 12101. Title I protects qualified individuals with disabilities from employment discrimination. *See* 42 U.S.C. § 12112. Title II protects against disability discrimination in public services. *Id.* § 12132. Title III protects against disability in public accommodations. *Id.* § 12188(a)(1). And Title V protects individuals who exercise their rights under Titles I, II, or III from retaliation. *See id.* § 12203(a)-(b).

The court first must determine the ADA's Titles under which Smith brings his claims. Smith, a then-student of Mount Marty, alleges that Mount Marty, a private university, discriminated and retaliated against him because of his disability. *See* Docket 18 ¶¶ 1, 2, 7; Docket 23 ¶¶ 1, 2, 7 (not disputing that Smith was a student at Mount Marty). Thus, Smith's claims under the ADA fall under Title III and Title V.[3] 42 U.S.C. § 12188(a)(1); *see also id.* § 12181(7)(J) (providing that private postgraduate school constitutes a place of public accommodation); *id.* § 12203(a)-(b); *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1071 (8th Cir. 2006) (student's discrimination complaints against private university under ADA brought under Title III).

---

[3] Although Smith's complaint states a claim under Title I of the ADA, *see* Docket 1 ¶ 1, Smith clarifies that this citation was an error and that he intended to bring his claim under Title III, s*ee* Docket 25 at 1 n.1. The court agrees that Title I is inapplicable because Title I applies only to employees, and Smith concedes he was not an employee of Mount Marty University at any time. *See* 42 U.S.C. § 12112; Docket 18 ¶¶ 8-9; Docket 23 ¶¶ 8-9.

> Title III provides:
>
> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

> Title V provides:
>
> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA].

*Id.* § 12203(a); *see also Rinehart v. Weitzell*, 964 F.3d 684, 689 (8th Cir. 2020).

It further provides:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by [the ADA].

42 U.S.C. § 12203(b).

The court next must determine whether Smith has Article III standing to assert his ADA claims under Titles III and V. Under Article III of the Constitution, federal courts may only resolve cases or controversies. *See Zanders v. Swanson*, 573 F.3d 591, 593 (8th Cir. 2009). To satisfy this case or controversy requirement, a plaintiff must have standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). For a plaintiff to have standing, he must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

5

redressed by a favorable judicial decision. *See id.* An injury in fact must be "concrete and particularized," and "actual or imminent, not conjectural or hypothetical[.]" *Id.* at 560 (internal quotation omitted). An injury is fairly traceable to the challenged conduct of the defendant "if the plaintiff shows 'a causal connection between the injury and the conduct complained of' that is 'not . . . th[e] result [of] the independent action of some third party not before the court.' " *In re SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017) (quoting *Lujan*, 504 U.S. at 560) (alteration in original). "For an injury to be redressable, judicial action must be likely to remedy the harm and cannot be merely speculative." *Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th Cir. 2000).

Smith has the burden of demonstrating standing, *Brooks v. City of Des Moines*, 844 F.3d 978, 979 (8th Cir. 2016), and must show he has standing to pursue each specific claim he brings forth, *see Davis v. FEC*, 554 U.S. 724, 734 (2008). Additionally, Smith must prove standing for each type of remedy he seeks. *Digit. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 956 (8th Cir. 2015).

Under Title III, the remedies available are "set forth in section 2000a-3(a) of this title . . . ." 42 U.S.C. § 12188(a)(1). Section 2000a-3(a) in turn authorizes injunctive relief only, and does not authorize damages. *See* 42 U.S.C. § 2000a-3(a). Thus, under Title III of ADA, a private litigant is limited to injunctive relief. *See Hillesheim v. Holiday Stationstores, Inc.*, 953 F.3d 1059, 1062 (8th Cir. 2020); *Wojewski v. Rapid City Reg'l Hosp., Inc.*, 450 F.3d 338, 342 (8th Cir. 2006).

Title V's remedies turn on the remedies available to a plaintiff for the Title under which he brings his underlying discrimination claim. *See G. v. Fay School*, 931 F.3d 1, 9-11 (1st Cir. 2019). Title V provides that "[t]he remedies . . . available under subsections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violation of subsections (a) and (b), with respect to subchapter I, subchapter II and subchapter III, respectively." 42 U.S.C. § 12203(c). Sections 12117, 12133, and 12188, in turn, provide separate remedial schemes for Titles I, II, and III. 42 U.S.C. § 12117 (Title I, disability discrimination in the workplace); *id.* § 12133 (Title II, disability discrimination in public services); *id.* § 12188 (Title III, disability discrimination in places of public accommodation).

So under this statutory scheme, if a plaintiff brings forth an ADA discrimination claim under Title III and Title V, the remedies available to him under Title V are the same remedies available to him under Title III. *See id.* § 12203(c); *Fay School*, 931 F.3d at 9-11. For example, in *Fay School*, the First Circuit addressed the remedies to which the plaintiff was entitled, when such plaintiff brought a Title III and Title V claim under the ADA. *See id.* at 9-10. The plaintiff argued that any remedy or procedure available under sections 12117, 12133, or 12188 were available for their retaliation claim. *See id.* at 9. The First Circuit rejected this argument, and instead held that based on statutory canons of construction and Congress's use of the word "respectively" in § 12203(c),

7

> a different set of remedies is available under Title V for retaliation depending upon the discriminatory practice opposed -- the remedies specified in § 12117 (Title I's enforcement provision) apply when the basis is Title I, the remedies in § 12133 (Title II's enforcement provision) apply when the basis is Title II, and the remedies in § 12188 (Title III's enforcement provision) apply when the basis is Title III.

*Id.* at 10. The court opined that the word "respectively" "indicates that the remedies in §§ 12117, 12133, and 12188 apply separately and in the order stated 'with respect to [Title] I, [Title] II and [Title] III of this chapter.' " *Id.* (quoting 42 U.S.C. § 1220(c)) (alterations in original). The court agrees with the reasoning in *Fay School* and adopts its conclusion. Other courts appear to have implicitly done the same. *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1264 (9th Cir. 2009) (determining remedies available under § 12203(a) by looking to remedies afforded under Title I because underlying discrimination claim sounded under Title I); *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 (7th Cir. 2004) ("Remedies available to a party making a retaliation claim against an employer under the ADA are first determined by reference to [Title I].").

Thus, because Smith's disability discrimination claims sound under Title III and because his remedies under Title III are limited to injunctive relief, Smith's retaliation claim under Title V is also limited to injunctive relief. *See* 42 U.S.C. § 12203(c); *Fay School*, 931 F.3d at 9-11. In short, Smith is limited to injunctive relief under his Title III and Title V claims.

With this available relief in mind, the record shows that Mount Marty dismissed Smith in late spring or early summer of 2020. *See* Docket 19-3.

8

Smith has submitted no evidence to suggest that he has attempted to re-enroll with Mount Marty or has any intentions of doing so. With no evidence that Smith intends to re-enroll at Mount Marty, a forward-seeking injunction would not redress the alleged injuries that he suffered in the past. *See Steger*, 228 F.3d at 893. Smith's allegations in his complaint seek relief for monetary damages, both from the past and for future lost wages. *See* Docket 1 at 11. But as discussed above, monetary damages are unavailable to Smith under his ADA claims. Thus, on this record, the court finds that Smith cannot meet his burden to show that he has standing to pursue his ADA claims. The court grants summary judgment in favor of Mount Marty and dismisses Smith's ADA claims under Title III and V for lack of jurisdiction.

### B. Rehabilitation Act

The court turns to whether Smith may recover emotional damages under the Rehabilitation Act. The Rehabilitation Act makes it unlawful for "any program or activity receiving Federal financial assistance" to exclude from participation, deny the benefits, or subject to discrimination of individual, "solely by reason of her or his disability." 29 U.S.C. § 794(a). A "program or activity" includes all of the operations of a college, university, or postsecondary institution. *Id.* § 794(b)(2)(A). The Rehabilitation Act incorporates the rights and remedies provided under Title VI of the Civil Rights Act of 1964. *See* § 794a(a)(2). Unlike Title III of the ADA, Title VI of the Civil Rights Act generally authorizes money damages. *See Barnes v. Gorman*, 536 U.S. 181, 185-87 (2002).

The Supreme Court recently discussed whether emotional damages are available under Title VI of the Civil Rights Act (and by extension, under the Rehabilitation Act). *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022). In *Cummings*, the Court discussed the framework it uses in determining the scope of remedies available under Title VI of the Civil Rights Act. *See id.* at 218-19. In doing so, the Court observed that Congress enacted Title VI of the Civil Rights Act under the Spending Clause of the Constitution. *See id.* In passing a Spending Clause statute, Congress "condition[s] an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds." *Id.* (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998)). As a result, the Court explained that when determining the availability of damages, the court should ask whether a federal funding recipient would know, at the time that it decided to accept federal dollars, whether emotional damages would be available should the recipient unlawfully discriminate. *See id.* at 220. "If yes, then emotional damages are available; if no, they are not." *Id.*

Applying this framework, the Court observed that it is "hornbook law" that emotional distress damages are generally not available in breach of contract cases. *See id.* at 221. Based on this general rule, the Court found its analysis "straightforward": the average federal recipient would not be on notice that it would be subject to emotional distress damages should it violate the statute, and thus emotional distress damages are not recoverable under the

Spending Clause statutes, and in turn, the Rehabilitation Act. *See id.* at 221-22.

  Smith resists this conclusion for three reasons. First, Smith argues that *Cummings* is distinguishable from his case because Mount Marty is an educational institution, unlike the federal funds recipient in *Cummings* (which involved a physical therapy services provider). *See* Docket 25 at 8; *Cummings*, 596 U.S. at 216-17. But nothing about the reasoning or holding in *Cummings* hinged on the specific type of business or institution that received federal funds. *See generally Cummings*, 596 U.S. at 216-230. Instead, as relevant here, the statute only requires that the program or activity receive federal financial assistance. *See* 29 U.S.C. § 794(a). In fact, the statute explicitly lays out various types of organizations that are subject to the Rehabilitation Act. *See id.* § 794(b). Indeed, the language in *Cummings* expressly states that the physical therapy provider in that case was subject to the Rehabilitation Act precisely because "it receives reimbursement through Medicare and Medicaid for the provision of some of its services[]" and thus it was an "entit[y] that receive[s] federal financial assistance[.]" *Cummings*, 596 U.S. at 217. Here, because the record undisputedly shows that Mount Marty receives federal funds and is a postsecondary institution, *see* Docket 24-1 at 6; Docket 18 ¶ 1; Docket 23 ¶ 1, the Rehabilitation Act plainly applies and the teachings from *Cummings*, 596 U.S. at 217, also apply, *see* 29 U.S.C. § 794(a)-(b).

  Second, Smith argues that *Cummings* is distinguished from his case because unlike in *Cummings*, Smith brought his claims under both the

11

Rehabilitation Act and the ADA. *See* Docket 25 at 9. Because the ADA is not subject to the contract theory discussed in *Cummings*, Smith argues that the Supreme Court's holding in *Cummings* does not preclude emotional damages for Smith. *See id.* But even if *Cummings* is not applied, Smith's argument ignores the independent reason why emotional damages are unavailable for his Title III claim under the ADA—namely that Congress explicitly restricts the remedies for such a claim to injunctive relief. *See* 42 U.S.C. §§ 12188, 2000a-3(a); *Hillesheim*, 953 F.3d at 1062; *Wojewski*, 450 F.3d at 342. Thus, emotional distress damages are unavailable to Smith for his Title III claim under the ADA (based on Congress's clear statutory limitations) and unavailable for his Rehabilitation Act claim (based on *Cummings*). Under either claim, Smith may not recover emotional damages. The court rejects Smith's second argument.

Finally, Smith argues that there is an exception to the general rule in *Cummings,* namely that emotional damages are available if the defendant was deliberately indifferent to the discrimination. *See* Docket 25 at 9-13. In support, Smith cites *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998), a Supreme Court opinion that held that under Title IX (also a Spending Clause Statute), a plaintiff is entitled to compensatory damages only if the defendant was on notice of the discrimination and acted with deliberate indifference. But *Gebser* did not discuss emotional damages and was instead only about the availability of general compensatory damages under Title IX suits. *See id.* at 283-84. Here, there is no dispute that general compensatory damages are available under the Spending Clause Statutes. *See Cummings*,

12

596 U.S. at 216. Instead, the issue is whether emotional damages are also available. *Cummings* answered this latter question: No. *See id.* at 221-22. Nothing about the Court's opinion in *Gebser* alters *Cumming*'s conclusion.

In fact, *Cummings* rejected a substantially similar argument to the argument advanced by Smith here. In *Cummings*, the plaintiff argued that emotional damages were still available to him even though emotional damages are generally not available in breach of contract cases because such damages *are* available in particular contract cases involving intentional breaches. *See* 596 U.S. at 222-23. Because intentional discrimination involves this kind of breach, the plaintiff argued that defendants should be on notice that they would be potentially subject to emotional damages. *See id.* But the Supreme Court expressly rejected this argument for two reasons. First, the Court held that the key inquiry was whether emotional damages were *generally* available in contract cases, not whether they were available at all in situations involving certain types of breaches. *See id.* at 223-26. Second, the Court noted that even if the relevant test is to determine whether federal funds recipients would be aware of specific contract rules that may be applicable in certain situations, courts have not reached a sufficient consensus such that emotional damages are in fact available at all in contract cases, much less the specific types of contract cases. *See id.* at 227-30. To the contrary, the Court observed "there is no agreement" amongst courts about whether and when emotional damages are available in contract disputes. *See id.* at 230. Thus, for these two independent reasons, the Court concluded that because federal fund recipients

13

would not have clear notice that emotional damages were available in private actions given that such damages are not traditionally available in contract cases, plaintiffs may not recover emotional damages under the Spending Clause Statutes. *See id.* at 230.

Smith's attempt to fit his case into a specific kind of contract case in which emotional damages are available runs squarely against *Cummings*' teachings. In short, *Cummings*'s statement of its holding unambiguously forecloses Smith's argument: "emotional distress damages are not recoverable under the Spending Clause antidiscrimination statutes we consider here." *Id.* The court rejects Smith's final argument.

## IV.   Conclusion

For the above reasons, it is ORDERED that Mount Marty's partial motion for summary judgment (Docket 17) is GRANTED. Specifically, the court dismisses Smith's ADA claim for lack of Article III standing. The court also dismisses Smith's request for emotional damages under the Rehabilitation Act.

DATED March 7, 2024.

> BY THE COURT:
>
> */s/ Karen E. Schreier*
> KAREN E. SCHREIER
> UNITED STATES DISTRICT JUDGE